## HARRISON CARVER et al.

*v.*

## CHARLES TODD et al.

Where the wife of a devisee of real estate takes care of the testator during his last sickness, and the testator, desiring to compensate her without altering his will, obtains a promise from the devisee that he will convey such devised real estate to his wife, after the decease of the testator, it will be decreed that such devisee takes said real estate in trust, and his conveyance thereof to his wife will be upheld, in equity, against the judgment creditors of the husband, devisee.

On creditor's bill.

*Mr. Martin L. Trimmer,* for the complainant.

*Mr. Henry A. Fluck* and *Mr. John L. Connet,* for the defendant.

### BIRD, V. C.

The judgment of the complainant should be declared to be a lien upon the lands in question prior to the conveyance under which the wife of the defendant claims, unless it appears to have been fully established that the grounds upon which she claims to hold the title have been clearly and satisfactorily supported by proof. It is alleged in the answer that the husband, the judgment debtor, was the devisee under the last will of Joseph B. Abbott, and that both the said husband and his wife took care of the said Abbott during the last eighteen months of his life, and that during that period he made said will and devised the land in question to Todd, the judgment debtor; and that before his death, and while upon his sick bed, he made known the fact of his having made his will and of the disposition he had made of the real estate, and mentioned the fact that Todd and his wife had taken care of him, and that he wanted the property

Carver *v.* Todd.

to go to those who had so taken care of him, and that he re-
quested Todd to convey the said lands to his wife. There is no
allegation in the answer that Todd made any promise to the tes-
tator. The answer leaves it with the simple declaration that the
testator made such request of Todd; but the testimony of Todd
himself upon this subject is in these words:

"*Q.* How did you come to make this deed?"

"*A.* It was at Joseph Abbott's request, after he said that my wife had taken
care of him through all his sickness—looking after him; he said he wanted
her to have it, and asked me if I would have any objections to it; so I told
him I was perfectly willing that she should have it; he often talked to me
about it while he was sick; he said he wanted me to give it after his death;
he always said that those who waited on him he wanted them to have his
property; he had often talked to me about it—several times—and wanted me
to do it after his death; I told him I was willing that she should have it; I
told that to Mr. Abbott; the property didn't belong to me then; it was willed
to me; Joseph Abbott and I entered into an article of agreement, and he
willed it to me at that time; I knew when I had this talk w'th him that he
had willed it to me."

Mrs. Todd testifies as follows:

"Mr. Joseph Abbott stated that he wanted me to have the property; he
made my husband promise on his death-bed that he would give it to me, be-
cause I had taken care of him; he said them that had taken care of him he
wanted them to have it; I have taken care of him during his sickness alto-
gether; I knew he had made a will, and he said that he wanted to change it
now, and he thought that that would answer every purpose; my husband and
I both promised at the time that it would be done; the property was deeded
to me through my brother."

This testimony shows that the testator not only made known
his wishes and the requests that the property should be conveyed
to the wife of the devisee, but that the devisee promised that he
would make such conveyance. It also appears that this request
and promise were made at a time when the testator spoke of
altering his will for the purpose of securing to Mrs. Todd the
object of his desire.

Was this conveyance made by Todd to his wife a voluntary
conveyance for the purpose of defrauding his creditors, or was it
in execution of the promise he had made to the testator, and

therefore in fulfillment of the trust? If the former, it is fraudulent and void as to the judgment of the complainant; but if the latter, the law declares that it would have been a fraud upon his part not to make the conveyance. It was declared in the case of *Vreeland* v. *Williams, 5 Stew. Eq. 734,* that such conveyances should be upheld in courts of equity, when the allegations upon which they rest are clearly and satisfactorily proved. As the citations in that case show, the principle which governs applies as well to real as to personal property taken in trust by devisees or legatees. See case of *Hoge* v. *Hoge, 1 Watts 163 (26 Am. Dec. 52),* where the question is fully discussed. See *note* to *Thompson's Lessee* v. *White, 1 Am. Dec. 258,* and *notes* to *Towles* v. *Burton, 24 Am. Dec. 413.* The parol proof is admitted, not to vary or contradict the terms of the will, but to enforce the promises of devisees and legatees who take under a will, which promises have been made in consideration of such devises or bequests to them. All courts concede the justness of this principle in order to prevent fraud. Besides the authorities above referred to, I call attention to the following: *Williams* v. *Vreeland, 5 Stew. Eq. 135; Goullaher* v. *Goullaher, 5 Watts 200; Chamberlain* v. *Chamberlain, 2 Freem. Ch. 34.*

After the very fullest consideration, I feel obliged to accept the testimony of the defendants upon this subject. No witnesses have been introduced to impeach their character, nor is there any circumstance in the case that tends to cast doubt upon the truthfulness of their assertions. The conveyance was not made to the wife until about nine months after the death of the testator, and this circumstance is laid hold of by counsel of the complainant as a complete answer to all the allegations respecting the promise made by Todd to the testator. But this, in my mind, is not so great a delay as to create any just grounds for suspicion. There can be no doubt but at that time the wife could have called upon this court to enforce the trust and compel the husband to execute the conveyance. According to his testimony nothing could have prevented this result.

The bill will be dismissed, without costs.